UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS BENSON, #248338,

       Plaintiff,

                                        Case No.  12-10095
-vs-                                    District Judge Bernard A. Friedman
                                        Magistrate Judge R. Steven Whalen

GREGORY BRUNETTE, ET AL.,

       Defendants.

                                    /

**REPORT AND RECOMMENDATION**

On January 31, 2012, Plaintiff Marcus Benson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Before the Court is a motion for summary judgment filed by Defendants Gregory Brunette, Scott Pelham, Mary Reid, Steven Anson, Jerold Schneider and Jessica Taylor [Doc. #11], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE as to these Defendants.

**I.    FACTS**

This case began with some stolen socks.  Plaintiff had a job at Michigan State Industries warehouse. On August 12, 2011, he was informed that he was fired from his job because socks had been stolen. *Complaint*, ¶¶ 2-3. Plaintiff informed Scott Pelham, the plant manager, that he did not steal anything. *Id*. ¶ 4.

On August 17, 2011, Plaintiff sent a letter to the Classification Director's Office requesting an interview to discuss his termination, as well as the possibility of receiving another work assignment. He did not receive a response. *Id*. ¶ 6.  On August 18, 2011,

Plaintiff received a report that gave him an above-average work score, but rated him as "untrustworthy." It was signed by Defendants Brunette and Pelham. *Id*. ¶ 8.

Plaintiff alleges that Defendant Schneider, a Corrections Officer, implicated him in the theft accusation by calling Defendant Brunette and "making an unfounded assumption" that Plaintiff was wearing new socks. *Id.* ¶ 14. Plaintiff alleges that Schneider accused only African-American prisoners of wearing new (and presumably stolen) socks, "although there was an equal number of Caucasian American prisoners...who had also been strip searched." *Id*. ¶ 15.

Plaintiff alleges that Defendant Mary Reid denied his Step I grievance. *Id*. ¶ 9. He also alleges that Reid stated that a search of the MSI facility revealed one opened and two unopened packages of new socks. Reid said that Defendant Anson found old socks with prisoner numbers on them in the trash. According to Plaintiff, Reid told Anson to fire all those involved. *Id.* ¶¶ 18-20.

Plaintiff brings the following claims against these Defendants: (1) denial of equal protection where Defendants who initiated the termination of his employment did so based on his race for the alleged theft of socks, while a Caucasian inmate who was caught at the intake area with a package of batteries was not terminated; (2) denial of due process where there was insufficient evidence to show that Plaintiff stole socks; (3) denial of due process where the Classification Director's Office failed to conduct an independent investigation into the assertion by Defendant Brunette and others that Plaintiff was "untrustworthy," or that he stole socks.

Attached to Defendants' motion as Exhibit A is the affidavit of Gregory Brunette, an MDOC Corrections Officer. He states that on August 10, 2011, Defendant Schneider, another Corrections Officer, told him that "new socks were found on Plaintiff, along with

several other prisoners." *Brunette Affidavit*, ¶ 4. He states that an evaluation report reflecting "untrustworthy" was prepared for all prisoners found wearing new socks on the date in question, and the reports were based only on the allegations and the untrustworthiness of the inmates. *Id*. ¶ 5.

Exhibit B is the affidavit of Jerold Schneider. He states that on the date in question, a number of prisoners, including the Plaintiff, returned from their work assignments wearing new socks. *Schneider Affidavit*, ¶ 4. He states that he did not accuse anyone of anything, but that he inquired at the inmates' work area about the new socks. *Id*. ¶ 5.

Exhibit C is Mary Reid's affidavit. She states that she was not involved in Plaintiff's removal from his work assignment, and did not instruct anyone to "fire" the Plaintiff or anyone else. *Reid Affidavit*, ¶ 4. She states that her involvement was limited to investigating and responding to Plaintiff's grievance, and that in the course of her investigation, she learned that Plaintiff had worn socks that did not have his prisoner number on them; that an opened package of socks was found in Plaintiff's work area; and that Steve Anson found old prisoner socks in a trash can.[1] *Id*. ¶¶ 5-6. She states that no misconducts were issued to the Plaintiff, and that "policy does not require photographic evidence." *Id*. ¶ 7.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.

---

[1] Defendants concede that none of Plaintiff's socks were found in the trash.

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

#### A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary or unreasonable distinctions in treatment between similarly situated individuals based on membership in a defined class. *Eisenstadt v. Baird,* 405 U.S. 438, 447 (1972). *See also City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985) (Equal Protection "is essentially a direction that all persons similarly situated should be treated alike"); *accord*, *Dubay v. Wells*, 506 F.3d 422, 428 -429 (6th Cir. 2007).

In this case, the Plaintiff's Equal Protection claim fails because he has not offered any evidence that the decision to terminate his employment was based on his race. Although he has submitted the affidavit of Duane Dexter (Plaintiff's Exhibit EE, Doc. #15) in support of his claim, that affidavit in fact contradicts his claim. Mr. Dexter states in his affidavit, dated May 14, 2012, that he is a "Caucasian-American" who was hired into the Distribution Control Warehouse of Michigan State Industries (the same location where Plaintiff worked) on April 27, 2011. *Dexter Affidavit*, ¶ 3. He states that in July or August of 2011, he returned from work, and when he was subjected to the routine shakedown, or strip-search, the Corrections Officer found a package of batteries in his pocket. He states that these were batteries that he "unintentionally forgot to leave at the work assignment." *Id*. ¶¶ 4-5. Although Mr. Dexter claims in ¶ 6 that Corrections Officer Brunette was informed, and that no disciplinary action was taken, he later states in ¶ 8 that on April 20, 2012, Brunette issued a Work Assignment Evaluation report "terminating my work assignment based on a suspicion of theft and being untrustworthy."

Contrary to Brunette's written report, Mr. Dexter claims that he was terminated not for theft, but because he "refused to continue to be subjected to willful infliction of mental distress, degradation, and humiliation by negative verbal comments of C/O Brunette." *Id*. ¶ 10.[2]

Thus, far from showing that Mr. Dexter, a white inmate, was treated more favorably, he was in fact accused of theft and fired for being "untrustworthy," the same as was the Plaintiff. Moreover, Mr. Dexter's claim that C/O Brunette inflicted "mental distress, degradation, and humiliation" on him hardly shows that Dexter was given preferential treatment because of his race.

The Plaintiff also states in his complaint that Defendant Schneider accused only African-American inmates of wearing new socks, "although there was an equal number of Caucasian American prisoners...who had also been strip searched." Complaint, ¶ 15. Plaintiff has presented no evidence, however, that any of the Caucasian prisoners were wearing new socks. He therefore has not shown that these other inmates were similarly situated. And again, Mr. Dexter, the one white inmate who was accused of theft, was treated exactly the same as the Plaintiff.

Accordingly, Plaintiff's Equal Protection claim must be dismissed.

### B. Due Process

The Plaintiff alleges a Due Process violation because there was insufficient evidence to support his termination from his prison job, and because the Classification Director's Office did not conduct an independent investigation into whether he stole the socks.

To support a Due Process claim, the Plaintiff must first show that the Defendants interfered with a constitutionally protected property or liberty interest. *Experimental*

---

[2] It appears that Mr. Dexter wrote his affidavit in support of his request for back wages. *See id.*, ¶¶ 12-15.

*Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007)(citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 579 (1972)). It is on this basic principal that his claim founders. In *Sandin v. Connor*, 515 U.S. 472, 486-87 (1995), the Supreme Court held that a prison inmate shows a Due Process violation only when the deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." An inmate does not have a protected liberty or property interest in prison employment. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)("[N]o prisoner has a constitutional right to a particular job or to any job").

In his response, Plaintiff concedes that there is no liberty or property interest in a prison job, but argues that a liberty interest arises from the fact that having a job is a prerequisite to obtaining a high eligibility for parole. However, there is no constitutionally protected interest that attaches to parole. *See Greenholtz v. Inmates of Nebraska Penal & Corrections,* 442 U.S. 1 (1979); *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994). Plaintiff's argument rests on a foundation of sand.

While the Plaintiff challenges the grievance and investigation procedures that were (or were not) followed, there is no Due Process right to an effective grievance procedure. *See Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir.2005); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir.2002). Nor does Michigan law create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf,* 1994 WL 105907, at * 1 (6th Cir. 1994). Finally, while Plaintiff faults the Classification Director's Office for not conducting an independent investigation[3], he has not provided any authority

---

[3] In his response [Doc. #15], at p. 10, Plaintiff states that he "is inclined to believe that Jessica Taylor was not personally involved in his job termination," but that she "knows the individual who was acting in her capacity during her absence." The fact that Plaintiff concedes that Defendant Taylor, the Classification Director, was not personally involved is sufficient reason by itself to dismiss the complaint against Taylor. *See Rizzo v.*

for the proposition that such an investigation is constitutionally required. In any event, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Of course, an investigation was conducted by Defendant Mary Reid in the context of Plaintiff's grievance.[4]

Because Plaintiff has failed to support either an Equal Protection or Due Process claim against any of these Defendants, summary judgment in Defendants' favor is appropriate.[5]

## IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Doc. #11] be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE as to these Defendants.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

---

*Goode*, 423 U.S. 362, 96 (1976); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

[4] Denying a grievance or failing to act on a grievance is insufficient to create liability under § 1983. *Shehee v. Luttrell, supra*.

[5] Defendants also argued that Plaintiff failed to properly exhaust his administrative remedies as required by 28 U.S.C. § 1997e(a), specifically by failing to name the Defendants in his grievance. However, Plaintiff asserts that at the time he filed his grievance, he did not know the names of the individuals who were involved in the termination of his employment. Where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust. *See e.g., Merriweather v. Zamora,* 2006 WL 2711809, *9 (E.D.Mich.2006), citing, *Thomas v. Woolum,* 337 F.3d 720, 734 (6th Cir.2003) ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."); *Shoucair v. Warren,* 2008 WL 2033714, *8 (E.D.Mich.2008) ("[N]othing in *Woodford* or *Jones* requires a grievant to somehow identify persons or information he does not have or cannot reasonably obtain."). Therefore, I reject the Defendants' exhaustion argument, and recommend that the summary judgment motion be decided adversely to the Plaintiff on the substantive merits.

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          **s/ R. Steven Whalen**
                                                          R. STEVEN WHALEN
                                                          UNITED STATES MAGISTRATE JUDGE

Date: February 25, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 25, 2013.

Marcus Benson, #248338
Parnall Correctional Facility
1780 E Parnall Rd
Jackson, MI 49201-7136

Johnetta M. Curry-Williams
Case Manager